ESTEBAN RIVERA ET AL., Plaintiffs and Appellees, *v.* RAMÓN MELÉNDEZ TABALES ET AL., Defendants and Appellants.

No. 10434. Argued April 1, .1951.—Decided April 23, 1951.

*Faustino R. Aponte* for appellants. *Cruz Ortiz Stella* and *Francisco González, Jr.* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Plaintiffs herein are the heirs and successors in interest of Francisca Cintrón Nieves and Esteban Rivera, who having married, recorded in their name a rural property of 45 cuerdas, situated in Chupacallos Ward in Ceiba.[1]

On or about December 20, 1915 and while his wife was living, Esteban Rivera subscribed a promissory note in favor of Francisco Hernández for $400. The note became due after the death of Francisca Cintrón Nieves and the creditor brought an action for recovery of money in the Municipal Court of San Juan against Esteban Rivera, but not against his late wife's heirs.[2] After having entered Rivera's default, the Municipal Court of San Juan rendered judgment against him for $400 principal and $13.73 interest plus $50 attorney's fees. The judgment being final and unappealable the Clerk of the court issued a writ of execution against defendant Esteban Rivera addressed to the marshal of the Municipal Court of San Juan. The latter indorsed it to the marshal of the Municipal Court of Fajardo who, in compliance therewith, sold the said property of 45 cuerdas at public auction on March 26, 1917, which was adjudicated to Faustino R. Fuertes, predecessor of defendants Carmen Garzot widow of Rodríguez Fuertes and William, Alberto, and Carmen Rodríguez Garzot for the amount of $300. The deed of sale was executed in his favor, and the property was recorded in the Registry of Property

---

[1] Francisca Cintrón Nieves died on February 15, 1916 and Esteban Rivera on February 20, 1932.

[2] It is not clearly stated whether the promissory note signed by Rivera was of a separate nature or whether on the contrary it belonged to the community partnership. It is unnecessary, nevertheless, to determine it.

of Humacao. It appears from a certificate issued by the Acting Registrar of Property of Humacao, that on March 21, 1911, the first record of the said property was made in the name of Esteban Rivera and Francisca Cintrón Nieves by virtue of a possessory title proceeding which had been brought by them in the Municipal Court of Fajardo. It also appeared that:

"A suit was brought in the Municipal Court of San Juan under Case No. 4216 by Francisco Hernández, plaintiff, versus Esteban Rivera, defendant, for recovery of money. After having entered defendant's default, the court rendered judgment in favor of plaintiff Francisco Hernández on September 18, 1916, in the amount of $413.73 principal plus $50 attorney's fees, legal interest and costs. By virtue of said judgment, the court issued a writ of execution on January 29, 1917, addressed to the marshal of the Municipal Court of San Juan, which writ was endorsed by the latter to the Marshal of the Municipal Court of Fajardo who, on March 1, 1917 and in compliance therewith, attached the property involved herein as property of Esteban Rivera subject to execution. The sale was advertised for two o'clock p. m., March 26, 1917, and after posting the corresponding notices the public auction took place on the stated date the property being awarded to Faustino R. Fuertes, Jr., as the sole bidder; that he immediately paid the sum of $300, and the corresponding certificate of sale was issued in his favor; and hence, Julio López Cruz, married, a public employee, of legal age, a resident of Fajardo, in his capacity as Marshal of the Municipal Court of Fajardo and acting in the name and by the authority vested in him by the Marshal of the Municipal Court of ,San Juan, sells the property thus numbered to Faustino R. Fuertes, Jr., married to Carmen Garzot, of legal age, property owner and resident of Naguabo, for the sum of $300 which was paid immediately for which reason he issued a receipt therefor. Accordingly, Faustino R. Fuertes, Jr., records in his name the possession of said property under title acquired at a public sale. The foregoing appears in the Registry of Property, from a copy of deed No. 26 executed before Notary Public Ángel García Veve in Fajardo on March 26, 1917, from a certificate issued in San Juan by Daniel Sosa, clerk of the Municipal Court on July 16, 1919, in which the

proceedings of said suit are copied, and from the marriage certificate which is before us, the first two documents having been presented to this Registry at two o'clock p. m. on August 6, instant, according to entry No. 17, at folio 17 of volume 28 of the book of registry. . . . . . ."

Subsequently, Faustino R. Fuertes sold said property to Ramón Meléndez Tabales, married to Mercedes Meléndez Meléndez, for $500, "the spouses Fuertes-Garzot being relieved of the responsibility of warranty against eviction as it was so agreed between the parties." After Fuertes' sale to Meléndez Tabales was recorded in the Registry of Property, the latter together with a relative of his constituted under the firm name of Meléndez and Meléndez, an Industrial Agricultural partnership, to which Ramón Meléndez Tabales contributed the above-mentioned property and a joint ownership equivalent to one-half of another property.

In the complaint filed in this case it is alleged, after stating the facts outlined above, that neither Faustino R. Fuertes nor his successors in title Ramón Meléndez Tabales and the firm Meléndez and Meléndez have acted in good faith in the possession of the property object of the suit; that they are aware from the Registry of Property of Humacao that the marshal of the Municipal Court of Fajardo acted without jurisdiction in the matter and that, therefore, the sale made by the latter in favor of Fuertes was null and void. It prays for the annulment of the proceedings in the Municipal Court of San Juan, that the revendication of the property be ordered as well as the surrender of the property and the payment of the fruits and rents, with costs and attorney's fees.

The essential facts of the complaint were denied, and the case was tried. The lower court rendered judgment for plaintiffs, declaring null and void the sale of the property carried out by the Marshal of the Municipal Court of Fajardo and granting the complaint; it ordered the defend-

ants to return to plaintiffs the property object of the suit; it ordered defendants that once the judgment became final and unappealable they should surrender it; it ordered the Registrar of Property of Humacao to cancel all the records of said property that appear in said Registry, starting with the one in favor of Faustino R. Fuertes; and it adjudged defendants Meléndez and Meléndez to pay the costs, including $300 for attorney's fees.[3] Defendants Ramón Meléndez Tabales, Carmen and José Ramón Meléndez Meléndez, Serafín Meléndez and Dolores Quiñones, and the firm Industrial Agricultural Partnership Meléndez and Meléndez appealed from that judgment. In their appeal they charge that the lower court erred: (1) In accepting evidence which was clearly inadmissible; in not holding (2) that defendants were third-party mortgagees; (3) that § 33 of the Mortgage Law is not applicable to the facts in this case; and (4) that defendants acquired ownership of the property in question by possession for more than ten years as to persons present and for twenty years with regard to those absent, with good faith and with a proper title; in holding (5) that they should return the property in litigation without compensation for them; and (6) that the writ of execution and the judgment of the Municipal Court were void; (7) in allowing Narcisa Morales García to appear as party-plaintiff; (8) in not holding that the action of plaintiffs had not prescribed, under §§ 36, 37, and 38 of the Mortgage Law; (9) in adjudging them to pay $300 attorney's fees; in holding (10) that it had authority to set aside the judgment of dismissal and (11) that plaintiffs could attack collaterally the auction proceedings. We shall discuss them immediately.

■ According to § 245 of the Code of Civil Procedure:

"Where the execution is against the property of the judgment debtor, it may be issued to the marshal of any district

---

[3] The successors in interest of Faustino R. Fuertes who appear as defendants did not answer and their default was noted.

in the Island. *Where it requires the delivery of real or personal property, it must be issued to the marshal of the district where the property, or some part thereof, is situated. . . ."* (Italics ours.)

As soon as the judgment entered by the Municipal Court of San Juan in the action for recovery of money filed against Esteban Rivera became final, naturally, the issuance of a writ of execution was proper in order to enforce the judgment entered. Such writ of execution was issued but it was addressed to the Marshal of the Municipal Court of San Juan, who indorsed it to the Marshal of the Municipal Court of Fajardo. This was not according to law. If it was intended to attach property situated within the judicial district of Fajardo, the proper thing to do was to issue a writ of execution addressed to the Marshal of the Municipal Court of Fajardo. When the marshal of this last court took action by virtue of the indorsement made to him by the Marshal of the Municipal Court of San Juan, his action was entirely null and void. *Lawton* v. *Porto Rico Fruit Exchange*, 42 P.R.R. 282; *Solá* v. *Castro et al.*, 32 P.R.R. 740, 747; *Benet* v. *Hernández*, 22 P.R.R. 323. *Cf. Maldonado* v. *Preston*, 22 P.R.R. 614.

From the Registry of Property, as we noted, there clearly appeared the cause of the nullity of the sale effectuated by the Marshal of the Municipal Court of Fajardo in favor of Faustino R. Fuertes. This being so, Ramón Meléndez Tabales and the firm Meléndez and Meléndez were not third persons. According to §§ 33 and 34 of the Mortgage Law:

"Article 33.—Instruments or contracts which are null under the law are not validated by their admissions to record.

"Article 34.—Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a

prior deed which was not recorded or for reasons which do not clearly appear from said registry. . . ."

Ramón Meléndez Tabales and the firm of which he was a member were not third persons, because although they did not take part in the act or contract which gave rise to the registration of the property in favor of Fuertes,[4] nevertheless, the defect of the title appeared clearly from the registry, and, hence, they had notice of said defect. *Cruz* v. *Heirs of González, ante,* p. 291; *Lizardi* v. *Caballero,* 65 P.R.R. 77; *Comunidad Religiosa etc.* v. *Fernández,* 61 P.R.R. 129, 138; *Annoni* v. *Heirs of Nadal,* 59 P.R.R. 638, 642–43; *Crespo* v. *Schlüter,* 58 P.R.R. 833; *Vives* v. *Heirs of Amorós,* 34 P.R.R. 170, 181. Since the action of the Marshal of the Municipal Court of Fajardo is void, the registration of the deed of sale in the Registry of Property of Humacao could not render said action valid. It is so provided expressly by § 33 of the Mortgage Law, *supra.* And since the cause of nullity clearly appeared in the registry, when Meléndez Tabales purchased the property from Fuertes, he did not acquire a valid title nor was he a possessor in good faith. We may say the same regarding the firm of which Meléndez Tabales was a member. *Vives* v. *Amorós, supra.* Thus, ordinary prescription could not favor Meléndez Tabales nor the firm Meléndez and Meléndez as their possession was not in good faith. Sections 1840, 1850, and 1857 of the Civil Code 1930 ed.[5] Nor does extraordinary

---

[5] Sections 1840, 1850, and 1857 of the Civil Code, 1930 ed., provide:

"Section 1840.—For ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law."

"Section 1850.—Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same, and could convey his title."

"Section 1857.—Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."

[4] Article 27 of the Mortgage Law provides that:

"For the purposes of this law, a third person shall be considered one who has not been a party to the recorded instrument or contract."

prescription without the necessity of title nor good faith, apply to them, for their possession until the date the complaint was filed, August 17, 1942, does not cover the thirty-year period required by law in such cases. Section 1859 Civil Code; [6] *Larracuenta* v. *Fabián*, 56 P.R.R. 743, 757; *Saurí* v. *Echevarría*, 51 P.R.R. 71; *Heirs of Juarbe* v. *Amador*, 42 P.R.R. 355; *González et al.* v. *Fumero et al.*, 38 P.R.R. 497; *López et al.* v. *Quiñones et al.*, 30 P.R.R. 317; *Martorell et al.* v. *J. Ochoa & Brother*, 25 P.R.R. 707; *Morales et al.* v. *Landrau et al.*, 15 P.R.R. 761, 771–2.

Articles 36, 37, and 38 of the Mortgage Law are not in point here, for, as we have seen, defendants are not third persons.[7]

The defendants not being third persons, the lower court did not err in admitting in evidence the death certificates of plaintiffs' ancestors, the former's birth certificates, the certificate of the registry of property, the certificate of the

---

[6] Section 1859 of the Civil Code provides:

"Ownership and other property rights in real property shall also prescribe by uninterrupted possession of the same for thirty years without the necessity of title nor good faith and without distinction between present and absent persons, with the exception mentioned in section 475, second article, Chapter I, Title VII, Second Book, of this Code."

[7] Articles 36, 37, and 38 of the Mortgage Law provide:

"Article 36.—*Rescissory and resolutory actions shall not lie against third persons* who have recorded the deeds of their respective interests in accordance with the provisions of this law.

"Article 37.—The following are excepted from the rule contained in the foregoing article:

"1. Rescissory and resolutory actions which owe their origin to causes which specifically appear in the registry.

"2. Actions for the rescission of conveyances made for the purpose of defrauding creditors in the following cases:

"When the second conveyance was made under a gratuitous title.

"When the *third person* was a party to the fraud.

"In their case *third persons shall not be prejudiced* by a rescissory action not brought within one year from the date of the fraudulent conveyance.

"Article 38.—As a consequence of the provisions of article 36, no instrument or contract shall be annulled or rescinded *to the prejudice of a third person* who shall have recorded his interest, . . . . ."
(Italics ours.)

Clerk of the Municipal Court of San Juan, the promissory note on which the action for recovery of money was based, nor the other documents offered in evidence by plaintiffs.

██ . The Marshal of the Municipal Court of Fajardo having executed the sale of the property at a public auction without authority to do so, the title of ownership thus acquired may be colaterally attacked. *González et al.* v. *Anglada et al.*, 33 P.R.R. 980, 983; *cf. Pérez* v. *District Court*, 70 P.R.R. 624, 630; *Benítez* v. *Benítez*, 34 P.R.R. 216, 220.

██ Since the complaint in this case was filed, as we have seen, on August 17, 1942 and inasmuch as the case had remained inactive for more than a year, on January 18, 1944 the Clerk of the District Court of Humacao requested that in accordance with Rule 3 of the district courts, the case should be considered dismissed. After the motion was notified to the parties the court rendered judgment on January 31 of the same year ordering the dismissal of the case. Later on November 17, 1948 plaintiffs moved to set aside the judgment thus rendered. The lower court, by order of February 18, 1949, set aside the judgment of dismissal and reinstalled the case, stating in its order the reasons for doing so. Among others it stated that "at the time the judgment of dismissal for lack of jurisdiction was entered there was a motion pending in the lower court and that the parties should have been interested in having it disposed of." We have examined this incident and we are not convinced that the court erred in setting aside its judgment and in reinstating the case.

██ Although the award of attorney's fees lies only when the losing party has been obstinate [8] we have repeatedly held that we shall not disturb the discretion of the court *a quo* in imposing them, unless we are convinced that in doing so, the court abused its discretion. *Santiago* v. *Gon-*

[8] Act No. 94 of May 11, 1937, (Sess. Laws, p. 229).

414

*zález*, 71 P.R.R. 882; *Figueroa v. Picó*, 69 P.R.R. 372. We are not convinced that there was such an abuse in this case.

 Shortly after the trial had commenced and while a witness for plaintiffs was testifying, the latter arrived at the conclusion that Narcisa Morales García was a necessary party in the suit because she was a successor in interest of a deceased daughter of Francisca Cintrón Nieves. For that reason they asked leave to include her as plaintiff, which the court granted. We do not believe that the court erred in doing so.

 Although in the complaint fruits and rentals were requested, the lower court did not include payment thereof in its 'judgment, for it held, —erroneously as we have seen—that "although the sale was void the purchaser acquired in good faith, for which reason he should not reimburse the fruits collected." Although it is true that the plaintiffs were prejudiced by that decision, as they did not appeal from the judgment the same holds in that respect. Thus, even though defendants had a right, according to § 384 of the Civil Code, 1930 ed.,[9] to be reimbursed for the necessary expenses incurred in the preservation of the property, they should be estopped from obtaining such reimbursement because at law they cannot assume two contradictory positions, that is, they cannot be possessors in good faith as the lower court held, in order to retain the fruits, and at the same time possessors in bad faith to claim the necessary expenses.

Since none of the errors assigned was committed the judgment appealed from will be affirmed.

---

[9] Section 384 of the Civil Code reads as follows:

"A possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected, and shall only have the right to be reimbursed for the necessary expenses incurred in the preservation of the thing. . . . . . . . "